UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CUEVAS,<br><br>     Plaintiff,<br><br> -against-<br><br>MARTIN O'MALLEY, and THE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>     Defendants. | **MEMORANDUM AND ORDER**<br>Case No. 1:24-CV-5218 (FB) |

*Appearances:*
*For the Plaintiff:*
EDWARD J. PAVIA, JR.
GLEN DEVORA
D'Agostino & Associates, P.C.
3309 Richmond Avenue
Staten Island, NY 10312

*For the Defendants:*
ANNE M. ZEIGLER
SIXTINA FERNANDEZ
SSA – Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

**BLOCK, Senior District Judge:**

  Plaintiff John Cuevas ("Cuevas" or "Plaintiff") seeks review of the Commissioner of the Social Security Administration's ("the Commissioner" or "Defendant")[1] denial of his application for Social Security Disability Insurance benefits under Title II of the Social Security Act. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the

---

[1] The clerk is respectfully directed to amend the caption to omit Defendant Martin O'Malley as redundant because the Commissioner is already separately named. This decision thus refers to the Commissioner as the sole defendant.

1

following reasons, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

## I.   Background

Cuevas applied for Social Security Disability Insurance benefits on May 10, 2021, alleging disability as of May 1, 2020. Tr. at 10, ECF No. 14.[2] An initial review denied his claims, and an administrative law judge ("ALJ") found Cuevas not disabled in a decision dated October 2, 2023. He requested review of the ALJ's decision, which the Appeals Council denied on May 29, 2024.

## II.   Discussion

District courts reviewing the Commissioner's determinations under 42 U.S.C. § 405(g) must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."[3] *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). They may not conduct a *de novo* review or substitute their judgment for that of the ALJ, *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), reversing the ALJ "only if the factual findings are not supported by substantial evidence or if the decision is

---

[2] The Commissioner filed the administrative transcript of the proceedings before the Social Security Administration at ECF No. 14. All references to ECF No. 14 are denoted as "Tr. __."
[3] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

2

based on legal error," *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

The Commissioner employs a five-step inquiry to evaluate Social Security disability claims. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At steps one and two, the ALJ found that Cuevas had not engaged in substantial gainful activity from the alleged onset date through his date last insured and had severe lumbar spine impairment and diabetes mellitus. Tr. at 13. However, also at step two, the ALJ concluded that Cuevas did not have severe gastroesophageal reflux disease, hypothyroidism, dyslipidemia, or anxiety. *Id.*

At step three, the ALJ found that these impairments did not meet or equal the severity of the specified impairments in the Listing of Impairments, specifically Listings §§ 1.15 and 1.16. *Id.* at 14. Cuevas's combination of impairments did not meet the severity of Listing § 1.15 because, *inter alia*, "there [was] no evidence that the nerve roots ha[d] been compromised in a manner causing" at least one of the necessary signs and symptoms. *Id.* His conditions also did not satisfy the requirements of Listing § 1.16 because, *inter alia*, there was no evidence of a necessary symptom. *Id*. at 15. Both Listings also required "medical documentation of the need for an assistive device[.]" *Id.*

3

At step four, the ALJ found that Cuevas had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 C.F.R. 404.1567(a)."[4] *Id.* However, Cuevas's RFC included the following limitations: "he could occasionally push and pull; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; and no exposure to hazards such as unprotected heights, dangerous machinery, or operating a motor vehicle." *Id.* The ALJ then found that Cuevas "was capable of performing past relevant work as a systems administrator" and that "[t]his work did not require the performance of work-related activities precluded by" his RFC. *Id.* at 27. Accordingly, the ALJ concluded that Cuevas was not disabled.

Plaintiff argues that the ALJ erred (1) by disregarding MRI evidence when considering the specified impairments at step three, (2) by erroneously determining that Plaintiff could perform sedentary work through cherry-picked evidence at step four, and (3) by finding that Plaintiff was capable of performing past relevant work as a systems administrator, allegedly contradicting the Vocational Expert's ("VE") testimony. Defendant argues that the ALJ (1) did consider the MRI evidence, (2) properly weighed the allegedly disregarded evidence, and (3) made a determination

---

[4] "Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §404.1567(a). Sedentary work also requires that an individual be able to stand and walk for a total of two hours, as well as sit six hours during an eight-hour workday. Social Security Rulings (SSR) 96-9p, 1996 WL 374185, at *3; see 20 C.F.R. § 404.1567(a)." Def.'s Mem. at 17 n.3, ECF No. 16.

4

consistent with the VE's testimony. The Court concludes that substantial evidence supports the ALJ's determination, which is free from legal error, and thus affirms.

### a. Disregarded MRI evidence at step three

Plaintiff argues that the ALJ erred at step three by not finding evidence of the nerve root compromise necessary for Listing § 1.15 and the spinal stenosis necessary for Listing § 1.16, when the record included MRI results "which revealed nerve root impingement and severe stenosis at *two levels* of the lumbar spine." Pl.'s Mem. at 7, ECF No. 15 (emphasis in original); *see* Tr. at 479–80. Defendant responds that the ALJ did consider the MRI results and that, regardless, Plaintiff could not satisfy the other requirements of both Listings. The Court agrees with Defendant.

While the ALJ did not explicitly mention the MRI results at step three, he did discuss them in finding that Plaintiff retained the RFC to perform sedentary work, "explicitly acknowledging that neuroforaminal narrowing impinged on the exiting L3 and L4 nerve roots." Def.'s Mem. at 19 (citing Tr. at 17). The Court is assured from this discussion at step four that the ALJ did consider the MRI results in making his step three determination. "When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented" especially where the Court is "'able to look to other portions of the ALJ's decision and to clearly credible

5

evidence[.]'" *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Even then, Plaintiff failed to meet his burden at step three because he could not satisfy the other requirements for Listings §§ 1.15 and 1.16. Listing § 1.15 requires evidence of more than nerve root comprise. It also requires Plaintiff to show that the nerve root compromise caused "radicular symptoms of pain, paresthesia, or muscle fatigue along with signs of muscle weakness and irritation, tension, or compression." Tr. at 14. Defendant cites a slew of medical evidence demonstrating that Plaintiff did not experience these symptoms or signs,[5] Def.'s Mem. at 20–21, and Plaintiff does not cite any contrary evidence. Further, both Listings §§ 1.15 and 1.16 require, *inter alia*, "medical documentation of the need for an assistive device[.]" Tr. at 15. The ALJ found "no evidence that the claimant medically requires an assistive device [,]" *id*., which Plaintiff does not contest. Having reviewed the record, the Court agrees that, "although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment," the ALJ's step three determination is supported by substantial evidence as demonstrated by "other portions of the ALJ's detailed

---

[5] *See* Tr. 679–80 (no neuro-anatomic distribution of pain); *id.* at 469, 590, 610, 650 (paresthesia in relation to diabetes and feet, not lumbar spine); *id.* at 364–65, 472, 475, 481–82, 571, 634, 640, 647 (denied experiencing paresthesia and/or doctor found normal lower extremity sensation).

decision[.]" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112–13 (2d Cir. 2010) (summary order).

      b. <u>Cherry-picked evidence in determining RFC</u>

Plaintiff avers that the ALJ erroneously determined that Plaintiff had an RFC to perform sedentary work by cherry-picking evidence and ignoring contrary evidence. Defendant responds that the ALJ weighed all evidence in the record and made a determination supported by substantial evidence. The Court is persuaded by Defendant's position.

It is clear from the ALJ's decision that he considered the allegedly disregarded evidence. First, Plaintiff asserts that the ALJ disregarded the MRI results mentioned above. But, as discussed, the ALJ did consider these results. *See* Tr. at 17. Second, Plaintiff points to numerous physical examinations demonstrating significantly reduced range of motion in his lumbar spine, positive straight leg raise tests, antalgic gait, and reduced legal strength. The ALJ mentioned these records as well, *id.*, but discounted them because positive examinations "more often show[ed] a normal, steady and independent gait, normal strength, and normal sensation," *id.* at 19. Third, Plaintiff states the ALJ disregarded records of treatment through injections to Plaintiff's spine. Yet the ALJ did discuss evidence of the injections used to treat Plaintiff's low back pain. *See id.* at 16–17. Fourth, Plaintiff emphasizes the medical opinion of treating physician Dr.

7

Alexis that Plaintiff's lower back condition would limit him to only sitting for less than two hours in an eight-hour day and would make him off-task 20% of the workday. The ALJ explicitly mentioned this opinion and deemed it "somewhat persuasive," but explained that "the record [did] not fully support the extreme limitations found by Dr. Alexis," including Dr. Alexis's own findings. *Id.* at 21. Fifth, Plaintiff argues that the ALJ disregarded his testimony and records of his symptoms from non-severe type 1 diabetes, namely of lightheadedness and dizziness. However, the ALJ found that Plaintiff's testimony regarding his symptoms of "lightheadedness" and "disorientation" was "not fully consistent with the overall record." *Id*. at 19; *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (explaining that ALJ may discount "claimant's subjective complaints" by "weighing the credibility of the claimant's testimony in light of the other evidence in the record"). And the medical records Plaintiff cites in support of this argument contradict his testimony, reporting that he denied symptoms of dizziness, vertigo, and syncope. *See* Tr. at 590–91, 596, 603, 610.

Ultimately, the ALJ did not impermissibly "'cherry-pick []' the positive aspects of" evidence in the record "to discount" medical opinions "as unsupported by the evidence," and thus weighed conflicting evidence within his discretion. *Rucker*, 48 F.4th at 94 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019)). The RFC determination "need not perfectly match any single medical

8

opinion in the record" because "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). The ALJ did just that, and the Court will not "substitute [in] its own judgment[.]" *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

    c. <u>Capacity to perform past relevant work</u>

Plaintiff asserts that the ALJ's determination that Plaintiff retained the capacity to perform his past relevant work as a systems administrator contradicts testimony by the VE and is thus erroneous. Defendant retorts that the VE's testimony is consistent with the ALJ's decision. The Court concurs with Defendant.

"Past relevant work in the fourth stage of the inquiry includes 'the specific job a claimant performed <u>or</u> the same kind of work as it is customarily performed throughout the economy.'" *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis added) (quoting SSR 82-62, 1982 WL 31386, at *3). A finding that the Plaintiff could perform his past relevant work either as actually or as generally performed is enough to deem Plaintiff not disabled. *Id.* The VE first testified that, based on a hypothetical involving the limitations the ALJ ultimately set in the sedentary RFC, Plaintiff could work as a systems administrator as actually and generally performed. Tr. at 56–57. Plaintiff then testified that his past systems

9

administrator job required him to stand or walk half the day and to sit the other half. *Id.* at 58–59. The VE responded that "50/50 with walk and sit" would "change the job from sedentary to light as performed." *Id.* at 60. From that, the VE concluded the job could be performed at a sedentary RFC only "as generally performed"—but not actually performed—and at a light RFC both as generally and actually performed. *Id.* In discussing the VE's testimony, the ALJ found that Plaintiff, even "with a further limitation of requiring a sit/stand option, could return to past work . . . as generally performed in the national economy." *Id.* at 22 (emphasis added). In doing so, the ALJ did not contradict, as Plaintiff alleges, the VE's conclusion that the job could be actually performed only under a light RFC but generally performed under both a sedentary and light RFC. Rather, Plaintiff has not met his "burden to show an inability to return to [his] previous specific job *and* an inability to perform [his] past relevant work generally." *Jasinski*, 341 F.3d at 185 (emphasis in original).

### III. Conclusion

The Court cannot find that "no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo*, 31 F.4th at 69. The ALJ's disability determination is thus supported by substantial evidence and, having found no legal error, is affirmed. Accordingly, Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

**SO ORDERED.**

                                                                    /s/ Fredric Block
                                                                    FREDERIC BLOCK
                                                                    Senior United States District Judge

Brooklyn, New York
July 17, 2025